# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

THOMAS ALLEN GORDON,

               Plaintiff,

v.

JOE BARNETT, et al,

               Defendants.

No. C03-5524KLS

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

      This matter comes before the Court on defendants' second motion for summary judgment filed pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56, concerning plaintiff's remaining due process claim. (Dkt. #200). The parties have consented to have this matter be heard by the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 73 and Local Rule MJR 13. After reviewing defendants' motion and the remaining record, the Court hereby finds and ORDERS as follows:

## FACTUAL AND PROCEDURAL BACKGROUND

      On April 3, 2008, the Court issued an order granting defendants' first summary judgment motion, and dismissing plaintiff's complaint. (Dkt. #162). On July 6, 2009, the Ninth Circuit Court of Appeals issued its opinion regarding plaintiff's appeal of the Court's order, finding the Court properly granted summary judgment on plaintiff's claim that his placement on Nutraloaf

ORDER - 1

violated the Eighth Amendment's prohibition against cruel and unusual punishment. (Dkt. #188, p. 2). The Ninth Circuit, however, also went on to find in relevant part that:

> . . . [Plaintiff] also claimed that he was placed on Nutraloaf without a hearing and that defendants were therefore prohibited from punishing him. The Fourteenth Amendment's Due Process Clause prohibits a jail from "punishing" a pretrial detainee without a due process hearing. There is no dispute that Gordon was placed on the Nutraloaf diet as punishment for his disciplinary infractions; as such, he was entitled to a due process hearing. . . .
>
> We remand for further proceedings on Gordon's due process claim consistent with this disposition.

(Id.) (internal citations omitted). On July 29, 2009, the Court of Appeals issued its mandate. (Dkt. #196).

On July 31, 2009, this Court issued an order directing defendants to file by no later than November 26, 2009, a motion for summary judgment in regard to the above procedural due process issue to be noted for consideration on November 27, 2009. (Dkt. #197). On October 27, 2009, defendants filed a motion for extension of time to file their summary judgment motion (Dkt. #198), which the Court granted on November 10, 2009, re-noting the date for consideration thereof to December 25, 2009 (Dkt. #199). On December 1, 2009, defendants timely filed their motion for summary judgment. (Dkt. #200). Although plaintiff was granted the opportunity to file a response to that motion, none to date has been received by the Court. Accordingly, this matter is now ripe for review.

## DISCUSSION

Summary judgment shall be rendered if the pleadings, exhibits, and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In deciding whether summary judgment should be granted, the Court "must view the evidence in the light most favorable to the nonmoving party,"

ORDER - 2

and draw all inferences "in the light most favorable" to that party. T.W. Electrical Serv., Inc. v. Pacific Electrical Contractors Ass'n, 809 F.2d 626, 630-31 (9th Cir. 1987). When a summary judgment motion is supported as provided in Fed. R. Civ. P. 56, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in Fed. R. Civ. P. 56, must set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e)(2).

If the nonmoving party does not so respond, summary judgment, if appropriate, shall be rendered against that party. Id. The moving party must demonstrate the absence of a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). Mere disagreement or the bald assertion that a genuine issue of material fact exists does not preclude summary judgment. California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987). A "material" fact is one which is "relevant to an element of a claim or defense and whose existence might affect the outcome of the suit," and the materiality of which is "determined by the substantive law governing the claim." T.W. Electrical Serv., 809 F.2d at 630.

Mere "[d]isputes over irrelevant or unnecessary facts," therefore, "will not preclude a grant of summary judgment." Id. Rather, the nonmoving party "must produce at least some 'significant probative evidence tending to support the complaint.'" Id. (quoting Anderson, 477 U.S. at 290); see also California Architectural Building Products, Inc., 818 F.2d at 1468 ("No longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment."). In other words, the purpose of summary judgment "is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." Lujan v. National Wildlife Federation, 497 U.S. 871, 888 (1990). For the reasons set forth

ORDER - 3

below, the Court finds plaintiff has not shown the existence of any genuine issue of material fact regarding his procedural due process claim. The Court further finds, therefore, that defendants are entitled to summary judgment.

At all times relevant to this matter, plaintiff was a pretrial detainee at the Clark County Jail. Pretrial civil detainees "retain at least those constitutional rights . . . enjoyed by convicted prisoners." Bell v. Wolfish, 441 U.S. 520, 545 (1979). The constitutional analysis the Court employs in evaluating a constitutional claim, however, is different depending on whether the individual asserting the right is a pretrial detainee or a convicted prisoner. See Simmons v. Sacramento County Superior Court, 318 F.3d 1156, 1160 (9th Cir. 2003) ("Different criteria apply to restrictions placed on prisoners who are held *before* convictions.") (emphasis in original). With respect to the former, the issue for claims that are grounded in the Due Process Clause is whether the particular restrictions imposed amount to punishment. See Valdez v. Rosenbaum, 302 F.3d. 1039, 1045 (9th Cir. 2002) (pretrial detainees have due process right against restrictions that amount to punishment) (citing United States v. Salerno, 481 U.S. 739, 746 (1987); Bell, 441 U.S. at 535).

A pretrial detainee's due process rights will be found to have been violated, therefore, if the restrictions are "imposed for the purpose of punishment." Id. (quoting Bell, 441 U.S. at 535 ("[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law.")). There is no violation, though, if the restrictions "are 'but an incident of some other legitimate government purpose.'" Id. In such circumstances, the restrictions are permissible. Id. (citing Salerno, 481 U.S. at 747); see also Bell, 441 U.S. at 537 ("Not every disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense, . . . [o]nce the Government has exercised its conceded authority to detain a

ORDER - 4

person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention.").

The first step "[i]n distinguishing between permissible restrictions and impermissible punishment" thus is to examine whether the restriction is based on "an express intent to inflict punishment." Valdez, 302 F.3d. at 1045. If there is no indication of such intent, the Court next is to consider "whether punitive intent can be inferred from the nature of the restriction." Id. This latter determination generally turns on "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether [the restriction] appears excessive in relation to the alternative purpose assigned [to it]." Id. (quoting Bell, 441 U.S. at 539).

As such, "if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" Id.; see also Simmons, 318 F.3d at 1160 (same). "Conversely, if a restriction or condition is not reasonably related to a legitimate goal – if it is arbitrary or purposeless – a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees." Bell, 441 U.S. at 539. In terms of such legitimate governmental goals, the Supreme Court in Bell went on to state:

> The Government . . . has legitimate interests that stem from its need to manage the facility in which the individual is detained. These legitimate operational concerns may require administrative measures that go beyond those that are, strictly speaking, necessary to ensure that the detainee shows up at trial. For example, the Government must be able to take steps to maintain security and order at the institution . . . Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial. We need not here attempt to detail the precise extent of the legitimate governmental interests that may justify conditions or restrictions of pretrial detention. It is enough simply to recognize that in addition to ensuring the detainees' presence at trial, the effective management of the detention facility once the individual is confined is a valid objective that

ORDER - 5

may justify imposition of conditions and restrictions of pretrial detention and
dispel any inference that such restrictions are intended as punishment.

Id. at 540 (internal footnotes omitted). In addition, "[i]n determining whether restrictions or conditions are reasonably related to the Government's interest in maintaining security and order and operating the institution in a manageable fashion, courts must heed our warning that '[s]uch considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters." Id. at 540 n.23 (quoting Pell v. Procunier, 417 U.S. 817, 827 (1974)).

As noted above, the Ninth Circuit ruled that there is no dispute here that plaintiff was "placed on the Nutraloaf diet as punishment for his disciplinary infractions," and that "as such, he was entitled to a due process hearing." (Dkt. #188, p. 2). "[A] pretrial detainee may not be punished without a due process hearing." Mitchell v. Dupnki, 75 F.3d 517, 524 (9th Cir. 1996). This does not mean pretrial detainees "are free to violate jail rules with impunity." Id. (noting, as discussed above, that Bell recognizes need for preserving internal order and discipline among pretrial detainees as well as convicted prisoners). Rather, pretrial detainees "may be subjected to disciplinary" action, but only if first accorded "a due process hearing to determine whether they have in fact violated any rule." Id.

In terms of the specific elements of due process required here, first a "written notice of the charges must be given to the" inmate – informing him "of the charges and to enable him to marshal the facts and prepare a defense" – at least 24 hours prior to the disciplinary hearing. Wolff v. McDonnell, 418 U.S. 539, 564 (1974). The inmate also "should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will

ORDER - 6

not be unduly hazardous to institutional safety or correctional goals." Id. at 566. In addition, "there must be a 'written statement as to the evidence relied on and reasons' for the disciplinary action." Id. at 565 (quoting Morrissey v. Brewer, 408 U.S. 471, 489 (1972)).

Plaintiff alleges in his complaint that he was served Nutraloaf without a hearing or notice that he would "be sanctioned to a segregated diet." (Dkt. #140, pp. 7-8). It is not exactly clear from the complaint when plaintiff is alleging that this occurred, though it appears he is claiming it occurred sometime in or after late October 2001. See id., pp. 6-8. Defendants, however, have come forth with evidence that plaintiff received three hearings in November 2001, for a series of minor and major infractions of jail rules he committed. See (Dkt. #201, pp. 2-3; Dkt. #201-2-#201-4; Dkt. #202, pp. 6-10; Dkt. #202-8-#202-10). That evidence further shows that plaintiff was given at least 24 hours notice of each hearing, that he was provided the opportunity to attend the hearings and testify and call witnesses on his behalf, and that a written notice of each hearing decision indicating the findings made and sanctions imposed – including placement on Nutraloaf – was issued. See (Dkt. #202, pp. 9-10; Dkt. #202-4-#202-7).

Plaintiff has not presented the Court with any evidence to show that such was not the case in regard to any of the above three disciplinary hearings. Indeed, as noted above, plaintiff failed to respond at all to defendants' motion for summary judgment. Accordingly, the Court finds that defendants have met their burden of showing plaintiff received a disciplinary hearing in regard to each instance in which he was placed on the Nutraloaf diet for purposes of punishment – i.e., in response to his continuing infractions of jail rules – which met the due process requirements set forth by the Supreme Court in Wolff. Nor does the Court find the decision to "administratively extend" plaintiff's "term on 'Nutraloaf'" due to the need "to maintain order in the jail," violated his due process rights. (Dkt. #201, p. 3).

ORDER - 7

As a result of his third disciplinary hearing on November 29, 2001, plaintiff was found guilty and "sanctioned to two weeks of 'Nutraloaf'," ending December 13, 2001. (Dkt. #201, p. 3; Dkt. #201-4). According to defendant Joe Barnett, the period of administrative extension lasted from December 28, 2001, to January 9, 2002. (Dkt. #201, p. 3). This followed a period during which plaintiff "continued to disregard jail rules," which involved, among other things, failure to follow orders and destruction of property. (Id.; Dkt. #202, pp. 8-9). As discussed above, absent any indication of an express intent to inflict punishment, if a restriction is rationally related to a legitimate governmental purpose, which is not excessive in relation to that purpose, the restriction does not amount to punishment. Such is the case here.

Also as discussed above, the government has a legitimate interest in maintaining security and order in its correctional institutions, including its jails housing pretrial detainees. Restraints reasonably related to that interest thus do not constitute impermissible punishment. Defendants attest that "[t]he use of 'Nutraloaf' was the only effective means to restore order in the jail" with respect to plaintiff's demonstrated extensive disregard for jail rules. (Dkt. #201, p. 3; Dkt. #202, pp. 6-9). Given that un-rebutted attestation – and the other unchallenged evidence presented by defendants concerning plaintiff's destructive behavior – the administrative use of Nutraloaf by defendants in this case was neither unconstitutional nor unreasonable. See Bell (holding effective management of detention facility constitutes valid objective justifying imposition of restrictions and dispelling any inference such restrictions are intended as punishment). This is particularly evidenced by the fact that "[o]nce plaintiff agreed to follow the rules and order was restored, the use of 'Nutraloaf' was suspended." (Dkt. #201, p. 3).

It is true that the record indicates plaintiff received at least three further infractions during the fifteen-day period between December 13, 2001, when the Nutraloaf diet imposed as a result

ORDER - 8

of plaintiff's third November 2001 hearing ended, and December 28, 2001, when that diet was first administratively imposed. See Dkt. #202, pp. 8-9. However, there is nothing in the record to suggest – and, once more, plaintiff does not otherwise show, let alone allege in his complaint – that the decision to administratively extend the Nutraloaf diet was expressly done with the intent to punish him for those infractions. In so finding, the Court has kept well in mind the Supreme Court's admonition that considerations regarding maintaining security and order, as well as jail management and operations generally, are considerations that are "peculiarly within the province and professional expertise of corrections officials," and that the courts should ordinarily defer to the expertise of such officials in determining whether their response thereto is exaggerated. Bell at 540 n.23 (quoting Procunier, 417 U.S. at 827).

## CONCLUSION

Defendants have met their burden of demonstrating that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law. Plaintiff has failed in all instances to allege facts sufficient to form a procedural due process violation. Accordingly, defendants' motion for summary judgment (Dkt. #200) hereby is GRANTED, and, therefore, plaintiff's complaint hereby is DISMISSED.

DATED this 16th day of February, 2010.

Karen L. Strombom
United States Magistrate Judge

ORDER - 9